UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTI M. OBRIEN, et al., <br> Plaintiffs, <br> v. <br> FCA US LLC, <br> Defendant. | Case No. 17-cv-04042-JCS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES** <br><br> Re: Dkt. No. 86 |

## I. INTRODUCTION

Plaintiffs Kristi M. O'Brien and John D. O'Brien filed this action in Santa Clara Superior Court, asserting claims against Defendant FCA U.S. LLC ("FCA") under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code section 1790, *et seq.* FCA removed the action to this Court on the basis of diversity jurisdiction and the parties eventually entered into a settlement agreement. Plaintiffs now bring a Motion for Attorneys' Fees, Costs and Expenses ("Motion") as the prevailing parties under California Civil Code section 1794(d). A hearing on the Motion was conducted on Friday, August 30, 2019 at 9:30 a.m. Plaintiffs submitted additional material in support of the Motion on September 27, 2019. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II. BACKGROUND

Plaintiffs purchased a 2012 Jeep Grand Cherokee on January 29, 2012 for a total purchase price of $53,825.90. O'Brien Complaint ¶ 8; Mikhov Decl. ¶ 3 & Ex. C. According to Plaintiffs' counsel, "within the applicable express warranty period, the vehicle began exhibiting serious

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

transmission and electrical issues due to the vehicle's power distribution component, the Totally Integrated Power Module ('TIPM')." Mikhov Decl. ¶ 4. He says that Plaintiffs took their vehicle to FCA's repair facility on seven separate occasions related to the transmission and at least seven occasions for "serious electrical concerns related to the TIPM" but FCA was "never able to fix the issues." *Id*. ¶ 5.

On June 30, 2016, Plaintiffs filed this action, retaining Knight Law Group ("Knight Law") to represent them on a contingent basis. *Id.* ¶¶ 8-9. On August 1, 2016, FCA offered to repurchase the vehicle for $57,000. ¶ 10 & Ex. D. According to Plaintiffs' counsel, the offer was "fatally vague, ambiguous and failed to account for its willful violation of the Song-Beverly Act." *Id.* ¶ 10. Therefore, Plaintiffs rejected the offer. *Id*. After an unsuccessful mediation on August 23, 2016, the parties engaged in discovery. *Id*. ¶¶ 11-13. On January 29, 2018, the law firm of Hackler Daghighian Marino & Novack P.C. ("HDMN") associated in to the case to assist Knight Law with trial preparation; attorney Sepehr Daghighian was to act as lead trial counsel in the case. Daghighian Decl. ¶¶ 10-11.

On May 4, 2018, FCA made Plaintiffs a "reasonable settlement offer that accounted for FCA's egregious actions under the Song-Beverly Act." Mikhov Decl. ¶ 17 & Ex. E ("Rule 68 Offer"). Under the Rule 68 Offer, FCA offered to pay Plaintiffs $152,000 plus reasonable attorneys' fees and costs. *Id*. Plaintiffs initially rejected the offer, but at a settlement conference on April 5, 2019, soon after the Court granted summary judgment in favor of FCA on Plaintiffs' claim for punitive damages, they accepted the Rule 68 Offer. *Id*. ¶ 20. In the meantime, between the time the offer was first made and its acceptance, Plaintiffs' counsel took the deposition of FCA's person most knowledgeable, defended a deposition of their expert, drafted an opposition to Defendant's motion to exclude Plaintiffs' experts, and travelled to appear at the motion hearing on Defendant's motion for summary judgment. *Id*. ¶¶ 18-19.

In the Motion, Plaintiffs ask the Court to award attorneys' fees in the amount of $107,718.75, that is, a lodestar amount of $71,812.50 plus a .5 multiplier of $35,906.25, and costs in the amount of $15,953.16. The lodestar amount consists of fees incurred by Knight Law in the amount of $50,870.00 and fees incurred by HDMN in the amount of $20,942.50. Mikhov Decl. ¶

2

2 & Ex. A (Knight Law time sheets); Daghighian Decl. ¶ 8 & Ex. A (HDMN time sheets). Plaintiffs' costs are set forth in their Bill of Costs. *See* Docket No. 85.

FCA challenges the amounts Plaintiffs request in the Motion. FCA contends the rates requested are unreasonable, the time billed is excessive, and that no multiplier should be awarded. In particular, it argues that fees incurred after the Rule 68 offer was made did not advance Plaintiffs' interests and therefore were excessive, that fees associated with travel were excessive because Plaintiffs could have retained counsel that was local, that the staffing of the case was inefficient and the association of a second law firm resulted in duplicative billing, that HDMN's time should be reduced because it billed using 15-minute increments, and that time that is "anticipated" in connection with HDMN's Reply on the instant motion and travelling to and attending the hearing on the fee motion should not be awarded. FCA also identifies certain specific billing entries it contends are unreasonable. FCA argues that no multiplier should be awarded because Plaintiffs' counsel did not take on significant risk in representing Plaintiffs on a contingent basis. FCA also filed objections to Plaintiffs' Bill of Costs, as set forth below.

## III. ANALYSIS

### A. Legal Standard

In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Under California law, buyers who prevail in an action under the Song-Beverly Act are entitled to "the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code section 1794(d). A party is a prevailing party if the court, guided by equitable principles, decides that the party has achieved its "main litigation objective." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 150–51 (2006); *see also Wohlgemuth v. Caterpillar Inc.*, 207 Cal. App. 4th 1252, 1262 (2012) (holding that "consumers who successfully achieve the goals of their litigation through a compromise agreement" may recover attorneys' fees and costs as prevailing parties under the Song-Beverly Act).

3

California courts have found that in awarding fees under the Song-Beverly Act, the trial court must "make an initial determination of the actual time expended; and then [must] ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994). In evaluating the reasonableness of counsel's charges, the court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Id*. The prevailing party has the burden of showing that the attorneys' fees it requests are reasonable. *Id*.

California courts have further held that the Song-Beverly Act permits the trial court to award a multiplier where it deems appropriate under the lodestar adjustment method. *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 819 (2006) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001)). In *Ketchum*, the California Supreme Court explained:

> [T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. . . . The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

24 Cal. 4th at 1132 (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977)). A court may also, "for an appropriate reason," make a downward adjustment under the lodestar adjustment method, for example where the court finds that time billed was excessive or that the tasks performed were in connection with unrelated claims upon which the party did not prevail. *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 161 (2006). It is improper, however, to limit a fee award under the Song-Beverly Act to a percentage of the prevailing party's recovery. *Id*. at 164. The "[l]odestar analysis is generally the same under California law and Federal law." *Rodriguez v. Cnty. of Los Angeles*, 2014 WL 8390755, *2 (C.D. Cal. Dec. 29, 2014).

**B. Lodestar Amount**

Plaintiffs have provided time sheets reflecting the time they spent on this litigation, broken down by specific task. Mikhov Decl. ¶ 2 & Ex. A; Daghighian Decl. ¶ 8 & Ex. A. The timesheets reflect the following time billed and requested rates for the attorneys who worked on the case:

Knight Law

- Amy Morse: 15.3 hours at $350.00/hour ($5,355.00)
- Christopher Swanson: 10.9 hours at $375.00/hour ($4,087.50)
- Deepak Devabose: 17.4 hours at $275.00/hour ($4,785.00)
- Diane Hernandez: 10.3 hours at $375.00/hour ($3,862.50)
- Ilan Isaacs: 13.5 hours at $325.00/hour ($4,387.50)
- Kristina Stephenson-Cheang: 16.6 hours at $375.00/hour ($6,225.00)
- Lauren B. Veggian: 12.1 hours at $350.00/hour ($4,235.00)
- Mitch Rosensweig: 18.0 hours at $325.00/hour ($5,850.00)
- Michael Morris-Nussbaum: 8.5 hours at $325.00/hour ($2,762.50)
- Russell Higgins: 4.7 hours at $450.00/hour ($2,115.00)
- Steve Mikhov: 13.1 hours at $550.00/hour ($7,205.00)

HDMN

- Sepehr Daghighian: 2 hours at $400.00/hour ($800)
- Larry S. Castruita: .5 hours at $300.00/hour ($150.00); 7 hours at $350/hour ($2,450); 6.75 hours at $385.00/hour ($2,598.75);
- Erik K. Schmidt: 1.5 hours at $250.00/hour ($375.00); 45 hours at $275.00/hour ($12,375)
- Asa O. Eaton: 9 hours at $225.00/hour ($2,025);
- Andrea Plata (paralegal): 2.25 hours at $75.00/hour ($168.75).

The Court has reviewed the timesheets and finds that the time billed is unreasonable for the following reasons. First, while FCA's Rule 68 offer does not cut off Plaintiffs' entitlement to attorneys' fees and costs, it may be considered in determining whether the amount of time spent on the case was reasonable. *See Self v. FCA US LLC*, No. 1:17-CV-01107-SKO, 2019 WL

1994459, at *10 (E.D. Cal. May 6, 2019) (awarding 30% of fees incurred after Rule 68 offer because Plaintiff had a "colorable chance of augmenting her recovery with an additional civil penalty under the Song-Beverly Act" by proceeding to trial and was, in fact, awarded a civil penalty at trial, but it only increased her recovery by $4,666) (citing *Nightingale*, 31 Cal. App. 4th at 104; *Cieslikowski v. FCA US LLC et al.*, Case No. 5:17-cv-00562-MRW, "ORDER RE: COSTS AND ATTORNEY'S FEES," at pp. 4–5 (Doc. 177) (C.D. Cal. Mar. 26, 2019) (Wilner, M.J.) (declining to award attorney's fees after Rule 68 offer for full value of the plaintiff's Song-Beverly Act claims where the legal work did not "reasonably advance" those claims at trial); *Jordan v. FCA US LLC et al.*, Case No. 2:17-cv-02435-MRW, "ORDER RE: COSTS AND ATTORNEY'S FEES," at pp. 6–7 (Doc. 130) (C.D. Cal. Nov. 30, 2018) (awarding 50% of fees expended after Rule 68 offer where the plaintiffs had a "colorable chance of augmenting their recovery with civil penalties" at trial that were not part of the settlement proposal); *Karapetian v. Kia Motors America, Inc.*, 539 F. App'x 814, 816 (9th Cir. 2013) (district court abused discretion in limiting fee request to period before settlement offer when plaintiff later recovered "additional" incidental damages [ ] above and beyond" that amount)).

Here, FCA offered to settle the case for $152,000 plus reasonable fees and costs in their Rule 68 Offer, which was served on Plaintiffs on May 4, 2018. Mikhov Decl. ¶ 17 & Ex. E. Plaintiffs concede that this offer was "reasonable." *Id.* They did not accept that offer until April 5, 2019, almost a year later. *Id.* ¶ 20. During that time, Plaintiffs incurred more than half of the fees that they request as their lodestar. Yet despite litigating for almost a year after the Rule 68 Offer was made, Plaintiffs ultimately accepted that offer, receiving no benefit from the additional litigation. It is true that Plaintiffs had a colorable claim for punitive damages, which might have justified the continued litigation and resulted in a punitive damages award that exceeded the Rule 68 Offer. But due to an error by counsel, that did not happen.

Plaintiffs' punitive damages claim turned on their ability to demonstrate that their vehicle had failed as a result of a TIPM defect that FCA allegedly concealed, the key to which was expert testimony. Yet Plaintiffs did not meet the Court's deadline for submitting an expert report by the expert they retained to establish this connection, Mr. Lepper, which also rendered Dr. Luna's

6

report irrelevant. Nor did they request an extension on the deadline. As a result, the Court excluded both experts, making it *impossible* for Plaintiffs to prevail on their punitive damages claim. This basic error on the part of counsel led to the dismissal of the punitive damages claim on summary judgment, with the consequence that litigation that had been conducted over the previous year resulted in no benefit to Plaintiffs. Under these circumstances, the Court concludes that the fees incurred between May 5, 2018 and April 5, 2019 were excessive and therefore reduces the lodestar for the time billed during this period by 70%.

The Court also eliminates from the lodestar 15.5 hours of "anticipated" time billed by Erik Schmidt in connection with the instant Motion. Although FCA challenged these time entries in its Opposition brief on the basis that the work was not adequately documented, Plaintiffs did not supply a declaration with their Reply brief documenting the time they spent on the briefing of the Motion and Reply.

On the other hand, the Court declines to reduce the time billed by Plaintiffs' counsel for travel on the basis that Plaintiffs could have retained local counsel. FCA has not demonstrated that Plaintiffs could have retained local counsel with similar qualifications and experience in lemon law and the Court declines to speculate on that question. The Court also declines to reduce the time billed on the basis that two law firms and multiple attorneys worked on this case; a review of the billing records reflects that the vast majority of the work on this case was performed by the associate attorneys whose billing rates were lower that the more experienced attorneys who worked on the case. The time sheets also do not reflect any significant amount of time billed for meetings and conferences between Plaintiffs' attorneys, which is one of the potential inefficiencies of using a large number of attorneys to staff a case. The Court concludes based on its review of the time sheets that the staffing choices of Plaintiffs' counsel did not result in excessive attorneys' fees.

Nor do the 15-minute billing increments used by HDMN appear to have resulted in excessive fees. In *Hall v. FCA*, the court reduced HDMN's fees on the basis of this billing practice where it found that the time sheets included numerous entries for tasks that should have taken less than 15 minutes but were billed for .25 hours. No. 16-cv-0684 JLT, Docket No. 73 at p.

8 (E.D. Cal. May 21, 2018). In contrast, HDMN's time sheets for work on this case do not include entries for small tasks that would be expected to consume less than 15 minutes, which is consistent with the statement by Sepehr Daghighian in his Reply declaration that the firm did not bill for smaller tasks (i.e., tasks that take less than fifteen minutes). Daghighian Reply Decl. ¶¶ 4-5. Therefore, without deciding whether HDMN's practice of billing in 15-minute increments is advisable, the Court concludes that it did not result in excessive time in this case and therefore does not warrant a reduction in Plaintiffs' lodestar.

Next, the Court addresses the reasonableness of the rates requested by Plaintiffs' counsel. The fee applicant has the burden of producing satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). As a general rule, the forum district represents the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Fee applicants may provide affidavits of practitioners from the same forum with similar experience to establish the reasonableness of the hourly rate sought. *See, e.g., Mendenhall v. Nat'l Transp. Safety Bd.,* 213 F.3d 464, 471 (9th Cir. 2000); *Jones v. Metro. Life Ins. Co.*, 845 F. Supp. 2d 1016, 1024–25 (N.D. Cal. 2012). Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that a rate set by the district court based, in part, on the rate awarded to same attorney in another case, was reasonable). Finally, the Court may draw on its own experience in determining what constitutes a reasonable rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (holding that "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees").

As to some of the attorneys who worked on this case the Court already determined their reasonable hourly rates in the *Bratton* case, No. 17-cv-1458 JCS, Docket No. 92, and in the *Base* case, No. 17-cv-1532 JCS, Docket No. 108 in which the time billed was performed in approximately the same time period as this case. The Court will apply those rates here. In particular, the Court finds that the following rates are reasonable: 1) Amy Morse - $350/hour; 2)

8

1 Christopher Swanson - $350/hour; 3) Deepak Devabose - $250/hour; 4) Diane Hernandez - $375/hour; 5) Kristina Stephenson-Cheang - $350/hour; 6) Mitch Rosensweig - $325/hour; 7) Steve Mikhov - $500/hour; 8) Sepehr Daghighian - $490/hour; 9) Larry Castruita - $300/hour for work in 2017; $350/hour for work performed on or after January 1, 2018; 10) Erik Schmidt - $250/hour for work performed before January 1, 2019; $275/hour for work performed on or after January 1, 2019; 11) Andrea Plata - $75/hour. The Court addresses the reasonableness of the rates sought for each of Plaintiffs' remaining attorneys below.

<u>Ilan Isaacs</u>: According to Mikhov, Ilan Isaacs "was an associate at The Altman Law Group." Mikhov Decl. ¶ 34. Mikhov says Isaacs received his law degree from UCLA Law School and at some point worked as a law clerk at the Human Rights Defense Council's Office. *Id*. No declaration from Isaacs has been supplied and there is no evidence in the record as to when he graduated from law school or was admitted to practice law. Nor is it clear when (if ever) he worked for Knight Law, though a few billing entries for Isaacs appear on the Knight Law time sheets in late December 2018. Plaintiffs have not pointed to any fee awards in which a court has addressed the reasonableness of Isaac's hourly rate. The Court concludes that Plaintiffs have not met their burden in establishing that the rate of $325.00/hour for Isaacs is reasonable; nor is there sufficient evidence in the record from which the Court can determine a reasonable rate based on its own experience. Therefore, the Court declines to award fees for work billed by Isaacs in this case.

<u>Lauren B. Veggian</u>: Lauren Veggian received her law degree from Hofstra University in 2014. Mikhov Dec. ¶ 32. She was admitted to practice in California in 2016. *Id*. Veggian did not supply a declaration and no court decisions determining a reasonable rate for Veggian have been. Based on its own experience, the Court finds that the requested billing rate of $350/hour is somewhat high and reduces the rate to $325/hour.

<u>Michael Morris-Nussbaum</u>: According to Steve Mikhov, Michael Morris-Nussbaum received his undergraduate degree from the University of Southern California and his law degree from UCLA Law School on a Dean's Scholarship. Mikhov Decl. ¶ 35. No declaration was supplied by Morris-Nussbaum and there is no evidence in the record as to when he graduated from law school and when (or even if) he was admitted to practice law in California. The Court

9

concludes that Plaintiffs have not met their burden in establishing that the rate of $325.00/hour is reasonable; nor is there sufficient evidence in the record from which the Court can determine a reasonable rate based on its own experience. Therefore, the Court declines to award fees for work billed by Morris-Nussbaum in this case.

Russell Higgins: Russell Higgins is an Associate with Knight Law and was admitted to practice in 2003. Mikhov Decl. ¶ 27. He graduated from Pepperdine University School of Law. *Id*. No declaration was supplied by Higgins and other courts have found that his reasonable rate is somewhat lower than the rate of $450/hour requested here. *See* Schwartz Decl., Ex. D (Hayward Superior Court order awarding Higgins' fees at a rate of $400/hour); *Id.*, Ex. F (Alameda Superior Court order awarding Higgins' fees at a rate of $350/hour). The Court finds that a reasonable rate is $400/hour.

Asa O. Eaton: According to Daghighian, Asa O. Eaton was an associate attorney with my firm until October 2018 and was been admitted to practice in California in 2017. Daghighian Decl. ¶ 6. He graduated from Southwestern Law School. *Id*. While in law school, Eaton was a judicial extern for the Honorable Kim McLane Wardlaw in the Ninth Circuit Court of Appeals. *Id*. His hourly rate in this case is $225/hour. Based on its experience, the Court finds this rate to be reasonable.

Based on the rates discussed above and taking into account the 70% reduction on fees incurred after May 4, 2018, the Court finds that Plaintiffs' reasonable lodestar amount is $29,196.25.

**C. Whether a Multiplier is Warranted**

Plaintiffs ask the Court to adjust the lodestar amount by applying a positive multiplier of .5. FCA argues that a positive multiplier is not justified here. The Court agrees with FCA.

While counsel obtained a good result for Plaintiffs, this case did not involve any issues that were particularly novel or complex. Further, although Plaintiffs point to the risk associated with counsel representing them on a fully contingent basis, as well as the delay in obtaining compensation because of the contingent representation arrangement, the risk Plaintiffs would not recover attorneys' fees was relatively low in this case. Attorneys' fees are guaranteed to

prevailing parties under the Song Beverly Act and Plaintiffs had a strong enough case (based on their description of the facts) that it was unlikely that they would receive nothing in damages. As to the delay in receiving compensation, the Court concludes that the rates that it has awarded are sufficient to compensate counsel for the cost of any delay in receiving their attorney fees arising from the contingent fee arrangement. Therefore, the Court awards the adjusted lodestar amount without a multiplier, which it finds to be a reasonable amount in light of all the circumstances.

**D.  Costs**

Plaintiffs request $15,953.00 in costs. *See* Bill of Costs, Docket No. 85. These costs fall into the following categories: 1) Court filing fee ($435); 2) fees for service of summons and subpoena ($822.90); 3) jury fees ($150); 4) deposition costs ($3,302.41; 5) Expert witnesses ($7,075.64); 6) messenger service and court filing services ($1,240.53); 7) mediation ($210.12; 8) Courtcall ($86.00); 9) overnight courier service ($18.78); 10) appearance attorneys ($280); 11) travel ($2,176.37); 12) $11.41; and 13) witnesses (non-expert) ($144.00). Plaintiffs have provided invoices and other documentation in support of their request.

FCA does not challenge the adequacy of the documentation supplied in support of Plaintiffs' costs but argues as to many of them that they should not be awarded because they are not allowable under Civil Local Rule 54-2 or 28 U.S.C. § 1920. *See* FCA US LLC's Objections to Plaintiffs' Bill of Costs ("Objections"), Docket No. 87 at 5, 8. It also argues that certain costs are excessive. In particular, it asserts the following objections:

- Length of litigation: FCA argues that Plaintiffs could have settled this case sooner, and asserts that Plaintiffs' costs are excessive because Plaintiffs unnecessarily prolonged the case. FCA does not say how much it is asking the Court to reduce Plaintiffs' cost award on this basis. Objections at 6-7.

- Expert Witnesses: FCA argues that fees for Dr. Luna and Mr. Lepper should be excluded, in their entirety, because the Court excluded both witnesses. It also argues that these fees should be denied because 28 U.S.C. § 1920 only provides for the award of costs in connection with "court appointed experts." *Id*. at 7.

- Fees for Personal Service of Deposition Subpoenas and Messenger and Courier

| | |
|---|---|
| 1 | Fees: FCA challenges fees incurred in connection with service of eight deposition subpoenas on employees of Folsom Lake Chrysler Dodge Jeep Ram, each of which cost $89.85. FCA argues that because all of these subpoenas were served at the same time and place, they could have been served at a lower cost and therefore, that the cost award should be reduced by $716.00. FCA also argues that the cost award should be reduced by $1,259.31 because Plaintiffs seek $1,240.53 for messenger services and $18.78 for overnight courier, neither of which are allowable expenses under 28 U.S.C. § 1920. *Id*. at 7-8. |

- Attorney Expenses for Deposition Attendance and Other Attorney Travel: FCA argues that $1,336.11 sought by Plaintiffs for expenses incurred by their attorneys in connection with attending depositions should be denied on the basis that 28 U.S.C. § 1920 does not allow for such costs. It further asserts that Plaintiffs are not entitled to fees in the amount of $2,176.37 for court appearances and the inspection of the vehicle because these costs are not allowed under 28 U.S.C. § 1928. *Id*. at 8.
- CourtCall and Appearance Attorneys: FCA argues that the cost award should be reduced by $86.00 for an appearance at a Case Management Conference via CourtCall and by $280 for appearance attorney fees on the basis that such costs are not recoverable under 28 U.S.C. § 1928 or Civil Local Rule 54. *Id*. at 8-9.
- Jury Fees: FCA argues that the $150 Plaintiffs spent on jury fees should not be awarded because Plaintiffs, rather than FCA, reserved a jury. *Id*. at 9.

As a preliminary matter, the Court rejects FCA's argument that Plaintiffs' costs are limited to those that are available under federal law, that is, under Rule 54 and 28 U.S.C. § 1920, for the reasons set forth in the *Base* case, No. 17-cv-1532, Docket No. 108 at pp. 10-12. The Court also rejects FCA's argument that the cost of service of deposition subpoenas on the employees of Folsom Lake Chrysler Dodge Jeep Ram was excessive as FCA has offered no evidence that process servers offer discounts for serving subpoenas on multiple individuals at the same location or that service of those deposition subpoenas could have been achieved more economically. The Court also finds the remaining costs to be reasonable, with the following qualification: for the

same reason Plaintiffs' fees incurred after May 4, 2018 have been reduced by 70% the Court also finds that their costs incurred after that date should be reduced by the same percentage. Accordingly, the Court awards $5,975.63 in costs.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part. The Court awards $35,171.88, that is $29,196.25 in fees and $5,975.63 in costs.

**IT IS SO ORDERED.**

Dated: October 18, 2019

_____
JOSEPH C. SPERO
Chief Magistrate Judge